v.

T.W., a Minor by Next Friend, K.A.W., and K.A.W., Individually, Respondents.

No. 21042.

Missouri Court of Appeals, Southern District, Division Two.

June 19, 1997.

M. Dwight Robbins, Fredericktown, for appellant.

Stephen P. Gray, Marble Hill, for respondent K.A.W.

CROW, Judge.

R.W.B.,[1] designating himself "Petitioner," brought this action against: "[T.][W.], A Minor by Next Friend, [K.] A. [W.], and [K.] A. [W.], Individually." For convenience (and, we hope, clarity), we henceforth refer to:

R.W.B. as "R,"

T.W. as "T,"

K.A.W. as "K."

R's two-count petition designated T and K as "Respondents."

R denominated Count I of his petition as a "cause of action seeking declaration of paternity, pursuant to RSMo Chapter 210 et. seq." Count I pled, *inter alia,* that T was born August 23, 1994, that K is T's mother, that R and K "had sexual intercourse at the time of conception of [T]," and that R is T's father. Count I prayed the trial court to declare R the father of T and to change T's surname to that of R.

R designated Count II of his petition as a "cause of action for Temporary Custody and Visitation." Count II prayed the trial court to award R "primary care" of T, "subject to liberal rights of temporary custody and visitation to [K]." Count II also prayed the trial court to order K to pay R child support.

A lawyer identifying himself as "Attorney for Respondents" filed an answer and counterclaim. The answer responded to the allegations in each count of R's petition, admitting some allegations and denying others. However, the admissions and denials were by

---

1. As shall appear *infra,* this case involves a child born out of wedlock. Consequently, we identify the parties by their respective initials instead of their names.

only "Respondent, [K.] A. [W.]." There were no admissions or denials by T.

The answer admitted K is T's mother and that T was born August 23, 1994. The answer further pled that during the month of T's conception, K "had sexual relations with [R] and with her former husband; therefore there has always been uncertainty whether [T] was the natural child of [R]."

The counterclaim was asserted by K alone. The counterclaim pled that K terminated her relationship with R because of "physical assaults and abuse" by him. The counterclaim further pled that R harassed K, causing her emotional distress, mental anguish, humiliation and embarrassment. The counterclaim prayed for actual and punitive damages plus attorney fees.

While the case was pending in the trial court, R moved for summary judgment on the paternity issue, averring that a "blood test" showed he had "a combined paternity index of 149 to 1 and a probability of paternity of 99.33%."

On July 27, 1995, the trial court entered an "Order and Judgment of Paternity Pendente Lite," declaring that R is T's father.[2]

The remaining issues were tried without a jury on March 25, 1996.

On May 10, 1996, the trial court entered judgment reiterating its earlier declaration that R is T's father. On the issue of custody, the judgment provides:

"Respondent[3] shall be awarded Sole Legal Custody of the minor child; Respondent shall be awarded primary care, custody and control of the minor child, subject to the Petitioner receiving periods of temporary custody and visitation with the minor child as set forth in 'Appendix J', which is attached hereto and is incorporated herein by reference."

Appendix J (a component of the judgment) sets out an elaborate custody plan wherein

R, according to his brief, has physical custody of T 38 percent of the year.[4]

The judgment also, *inter alia:* (1) orders R to pay K $350 per month child support, (2) denies R's prayer to change T's surname, and (3) denies K's counterclaim.

R brings this appeal, maintaining the trial court erred in: (1) denying R's prayer to change T's name, and (2) setting the child support at $350 per month. R argues the child support should have been only $159 per month.

For the reasons that follow, we decline to address either claim of error.

■ As reported earlier, R sought the declaration of paternity "pursuant to RSMo Chapter 210." We assume he was referring to the Uniform Parentage Act, §§ 210.817–.852, RSMo 1994. Section 210.830 reads:

"The child shall be made a party to any action commenced under sections 210.817 to 210.852. If he is a minor, he may be represented by a next friend appointed for him for any such action. The child's mother or father or the division of child support enforcement may represent him as his next friend. A guardian ad litem shall be appointed for the child only if child abuse or neglect is alleged, *or if the child is named as a defendant,* or if the court determines that the interests of the child and his next friend are in conflict...." (Emphasis added.)

As we have seen, R brought this action against T and K, designating them as "Respondents." Inasmuch as T did not bring this action,[5] but was instead a party against whom the action was brought, T was obviously a "defendant" within the meaning of § 210.830, above. Consequently, § 210.830 mandated the appointment of a guardian ad litem for T.

Mindful of that requirement, this court combed the record to determine whether

---

2. The order also commanded R to pay K a monthly sum as child support.

3. The judgment refers to K as "Respondent," and to R as "Petitioner."

4. R's brief is self-contradictory. In one place it says 38 percent; in other places it says 44 percent. We calculate 37 percent.

5. A child can bring an action under the Uniform Parentage Act. § 210.826, RSMo 1994.

such an appointment was made. This court found no indication of one.[6]

In *Lechner v. Whitesell by Whitesell,* 811 S.W.2d 859 (Mo.App. S.D.1991), a man sued a child and the child's mother seeking a declaration under the Uniform Parentage Act that he was the child's father. *Id.* at 860. The petition in *Lechner*—like R's petition here—alleged the man was bringing the action against the child "by his next friend, [the mother]," and against the mother "in her capacity as next friend for [the child]." *Id.*

At trial in *Lechner,* the man and the mother stipulated that he was the child's father. *Id.* The trial court entered judgment resolving other issues, i.e., custody, visitation, child support, birth expenses and attorney fees. *Id.* The man appealed, raising claims of error regarding the latter rulings. *Id.* at 860–61.

This court explained in *Lechner* that the clause in § 210.830 (quoted *supra* ) which refers to the appointment of a next friend to represent a child envisions that the child will be proceeding as a plaintiff. *Id.* at 861. This court further explained that Rule 52.02(e) provides that after a civil action is commenced against a minor and process is served on him, the action shall not be further prosecuted until a guardian or guardian ad litem for such minor be appointed. *Id.* That is consistent with the clause in § 210.830 which provides that a guardian ad litem shall be appointed for the child "if the child is named as a defendant."

In *Lechner,* this court examined the record and found no indication that a next friend or guardian ad litem was appointed for the child. *Id.* The opinion pointed out: "Merely alleging that [the mother] was the mother and next friend does not make her the next friend or guardian." *Id.* at [3]. This court held:

> "Failure to appoint a guardian ad litem for a minor although not resulting in a void judgment is reversible error on a direct appeal. *McDaniel v. Lovelace,* 439 S.W.2d 906, 911 (Mo.1969). The predecessor to

this district held that in any proceeding against an infant they are a ward of the court and their rights are to be carefully guarded, and it is 'plain error in proceeding to final judgment against a minor defendant not represented by a guardian'. *Morgan v. Morgan,* 289 S.W.2d 151, 153 (Mo.App.1956)."

*Lechner,* 811 S.W.2d at 861–62[8].

This court reversed the judgment in *Lechner* without addressing the appellant's claims of error and remanded the case to the trial court for appointment of a guardian ad litem for the child, and thereafter for further proceedings. *Id.* at 862.

Because the instant case appeared indistinguishable from *Lechner,* this court entered an order in the instant case granting R an opportunity to either demonstrate that a guardian ad litem was appointed for T by the trial court or, if none was appointed, to show cause why this court should not proceed in the instant case as it had in *Lechner.*

This court received no response from R within the time allowed. However, this court did receive a response from K.

K conceded that no guardian ad litem was appointed for T in the trial court. Nonetheless, asserted K: "The child was made a party, with Respondent[ [7]] as next friend."

█ K did not cite any place where the record shows she was appointed T's next friend in compliance with Rule 52.02(b), nor did she supplement the record with any documentation of such an appointment. As underscored in *Lechner,* merely alleging that a child's mother is the child's next friend does not constitute the mother a next friend. 811 S.W.2d at 861[3].

K also attempted to circumvent *Lechner* by arguing that an action under the Uniform Parentage Act in which paternity is ultimately uncontested (as here) is indistinguishable from a dissolution action where paternity "is not in dispute but other issues such as custody, support and visitation are litigated."

---

**6.** The trial court's docket sheet is not in the record on appeal, hence this court does not know what that document might have revealed.

**7.** We assume K, by the term "Respondent," meant herself. As noted earlier, T and K were each designated a "Respondent" in the trial court.

The difference between the instant case and an action for dissolution of marriage is that in the instant case T was required by § 210.830 to be a *party*, whereas children are not parties in dissolution actions. The requirement for a next friend or guardian ad litem for a child who is a party to an action under the Uniform Parentage Act is clearly spelled out in § 210.830.

*State ex rel. O.H. v. J.F. P.*, 891 S.W.2d 856 (Mo.App. W.D.1995), cited by K, does not aid her. We glean from the opinion in *O.H.* that the child was not a defendant, but was instead a plaintiff, and that the child's mother was appointed next friend for the child. *Id.* at 860.

Because the instant case is governed by *Lechner*, the judgment must be reversed and the cause must be remanded to the trial court for appointment of a guardian ad litem for T and thereafter for further proceedings. Because the guardian ad litem may bring the trial court a fresh perspective as to whether a change of T's name would be in T's best interest and whether the custody plan in Appendix J is in T's best interest, we decline to comment on either of those subjects. Inasmuch as R's complaint about child support is based on the amount of time he would have had physical custody of T per Appendix J— which the trial court may elect to change after further proceedings on remand—we likewise forgo comment on child support.

The judgment is reversed and the cause is remanded to the trial court for appointment of a guardian ad litem for T and thereafter for further proceedings.

PARRISH and GARRISON, JJ., concur.

